FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

CABRITA POINT DEVELOPMENT,      )
INC. f/k/a K.R. DEVELOPMENT     )
CORP.,                          )
                                )
            Plaintiff,          )
                                )
        v.                      )
                                )
WILLIAM HOUSTON EVANS and       )
JAMES ALDERMAN EVANS, JR,       )
their heirs, successors,        )
representatives and assigns,    )
and all other persons unknown   )      Civil No. 2006-103
claiming any right, title, or   )
interest in Parcel No. 6D-8     )
Estate Nazareth, No. 1 Red      )
Hook Quarter, St. Thomas, U.S.  )
Virgin Islands,                 )
                                )
            Defendants.         )
_____ )
                                )      consolidated with
WILLIAM HOUSTON EVANS,          )
individually, and              )
TEWATENNIETHA EVANS, as         )
trustee for the JAMES A. EVANS  )
FAMILY REVOCABLE TRUST,         )
                                )
            Plaintiffs,         )
        v.                      )
                                )
CABRITA POINT DEVELOPMENT,      )      Civil No. 2006-109
INC. f/k/a K.R. DEVELOPMENT     )
CORP., it heirs, successors,    )
representatives and assigns,    )
and CABRITA GRAND ESTATES,      )
LLC, it heirs, successors,      )
representatives and assigns,    )
and FIRST BANK PUERTO RICO,     )
and all other persons unknown   )
claiming any right, title,      )
estate, lien, or interest in    )
Parcel No. 6D-8 Estate          )
Nazareth, No. 1 Red Hook        )
Quarter, St. Thomas, U.S.       )
Virgin Islands,                 )
                                )
            Defendants.         )

**ATTORNEYS:**

**James Bernier Jr. Esq.**
St. Thomas, U.S.V.I.
> *For William Houston Evans, Tewatennietha Evans, and the*
> *James A. Evans Family Revocable Trust*

**Susan Bruch-Moorehead, Esq.**
**Henry C. Smock, Esq.**
**Kyle Waldner, Esq.**
St. Thomas, U.S.V.I.
> *For Cabrita Point Development, Inc. f/k/a K.R. Development*
> *Corp.*

**Maria T. Hodge, Esq.**
**Mark D. Hodge, Esq.**
St. Thomas, U.S.V.I.
> *For Cabrita Grand Estates.*

## MEMORANDUM OPINION

Before the Court is the motion of Cabrita Point Development, Inc. f/k/a K.R. Development Corp. ("Cabrita Point") to reconsider, vacate, or reopen summary judgment. William Houston Evans and Tewatennietha Evans as trustee for the James A. Evans Family Revocable Trust (collectively, the "Evans") oppose the motion. The Court held a hearing on the motion on April 27, 2009. At that time, the Court ordered the parties to file supplemental evidence. (Oral order April 27, 2009.) The parties timely complied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1976, the Evans purchased Parcel No. 6, Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas, U.S. Virgin Islands ("Parcel 6"). Parcel 6 was later subdivided into several other parcels,

including Remainder of Parcel 6 ("Remainder 6"), Remainder of Parcel No. 6D ("Remainder 6D), Parcel Nos. 6D-1, 6D-2, 6D-3, 6D-4, 6D-5, 6D-6, 6D-7, Parcel 6D-8 ("Parcel 6D-8"), Parcel Nos. 6A, 6B 6C, 6E, 6F, 6G, 6H, 6I, 6J, 6K, 6L, 6N, 6O, No. 6P, and 6Q.

In 1982, the Evans conveyed Remainder 6, along with Remainder Parcel 6D, Parcel No. 6D-1, Parcel No. 6D-2, Parcel No. 6D-3, Parcel No. 6E, and Parcel No. 6Q, which had been surveyed out of Parcel 6 by a surveyor named Leonard Lawrence ("Lawrence"), to Peninsula Development Limited Partnership ("PDLP"). At some point, the exact date of which is not clear from the record, PDLP conveyed all of its assets to its general partner Peninsula Development, Inc. ("Peninsula"). Peninsula was a corporation formed by the Evans, along with others, in 1980. In 1984 Peninsula conveyed "Remainder Parcel 6M (formerly known as Parcel No. 6)," Remainder 6D, Parcel 6D-1, Parcel 6D-2, Parcel 6D-3, Parcel 6E, Parcel 6L, and Parcel 6Q, all of Estate Nazareth, No. 1 Red Hook Quarter to K.R. Development ("K.R."). (Ex. 4 Mot. for Summary J.) K.R. later changed its name to Cabrita Point. Thereafter Cabrita Point conveyed Parcel 6D-8 to Cabrita Grand Estates ("Cabrita Grand").

On March 3, 2006, Cabrita Point filed a five-count complaint against the Evans. In its complaint, Cabrita Point sought to quiet title and to obtain a declaratory judgment that it owns Parcel 6D-8. Cabrita Point also alleged claims of adverse

possession, bad faith slander of title, and deliberate
interference with contractual relations.  The Evans filed an
answer to Cabrita Point's complaint in which they raised four
counterclaims.  The Evans sought to quiet title and to obtain a
declaratory judgment with regard to the ownership of Parcel 6D-8.
The Evans also raised counterclaims of bad faith slander of title
and deliberate interference with contractual relations.[1]

On July 12, 2006, the Evans filed a separate action in this
Court alleging identical claims to their counterclaims.
Thereafter, the cases were consolidated.

On April 20, 2007, the Evans moved for summary judgment on
all of their claims and Cabrita Point's claims.  On April 25,
2007, Cabrita Point filed a motion for an extension of time to
respond to the Evans' pending motion, pursuant to Rule 56(f) of
the Federal Rules of Civil Procedure.  That motion was granted by
an order dated May 10, 2007.  The order extended the response
deadline to June 15, 2007.  A hearing on the motion was scheduled
for July 20, 2007.  At some point, without leave of the Court,
the parties agreed to further extend the response deadline to
June 29, 2007.

On July 13, 2007, Cabrita Point filed another motion for an
extension of time to file its opposition to the Evans' motion.
Cabrita Point requested an extension of five business days in its

---

[1] That action was captioned under Civ. No. 2006-103.

motion.  The extension of time as requested by Cabrita Point
ended on July 20, 2007, the date of the scheduled hearing.

On July 20, 2007, this matter came on for a hearing on the
summary judgment motion.  On the day of the hearing, Cabrita
Point still did not file its opposition brief.  The Court denied
Cabrita Point's motion for an extension, noting that Court-
ordered deadlines are not suggestions, but are orders of the
Court that require compliance.

At the hearing, the Court ruled from the bench, granting
summary judgment in favor of the Evans on Cabrita Point's
complaint for count I (adverse possession), II (quiet title), III
(declaratory judgment), IV (slander of title), and V (deliberate
interference).  The Court also granted summary judgment in favor
of the Evans on count I (quiet title) and II (declaratory
judgment) of their complaint.  The Court denied summary judgment
as to counts III (slander of title) and IV (deliberate
interference) of the Evans' complaint.[2]  Cabrita Point timely
filed a motion for reconsideration.

Cabrita Point asks the Court to take into consideration
matters set forth in Cabrita Point's untimely opposition to the
Evans' summary judgment motion, and to: (1) to reconsider its
denial of Cabrita Point's motions for an enlargement of time to

---

[2] At the hearing, the Evans moved to dismiss their counterclaims in
Civil No. 2006-103.  The Court granted that motion.  Accordingly Civil No.
2006-103 was entirely resolved. As such, the only remaining claims in this
action are counts III (slander of title) and IV (deliberate interference) in
Civil No. 2006-109.

file an opposition, and (2) to reconsider its order granting the

Evans summary judgment on all counts of Cabrita Points complaint

and granting the Evans' summary judgment motion as to counts I

and II of their complaint.

In the alternative, Cabrita Point asks the Court to open the

judgment pursuant to Federal Rules of Civil Procedure 59(a) or

54(b). Cabrita Point asks the Court to take additional evidence

and make new findings.

## II. DISCUSSION

Local Rule of Civil Procedure 7.3 provides for motions to

reconsider based upon, "1. intervening change in controlling law;

2. availability of new evidence, or; 3. the need to correct clear

error or prevent manifest injustice." LRCi 7.3.

The purpose of a motion for reconsideration "is to correct

manifest errors of law or fact or to present newly

discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,

909 (3d Cir. 1985). Such motions are not substitutes for

appeals, and are not to be used as "a vehicle for registering

disagreement with the court's initial decision, for rearguing

matters already addressed by the court, or for raising arguments

that could have been raised before but were not." *Bostic v. AT&T*

*of the Virgin Islands*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004).

To support a motion for reconsideration on the basis of

newly available evidence, the movant must "show not only that

this evidence was newly discovered or unknown to it until after

the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion]." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (alteration in original) (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)).

In the context of a motion to reconsider, manifest injustice "[g]enerally, [] means that the Court overlooked some dispositive factual or legal matter that was presented to it." *In re Rose*, No. 06-1818, 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007). Manifest injustice has also been defined as "'an error in the trial court that is direct, obvious, and observable.'" *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004)(quoting *Black's Law Dictionary* 974 (7th ed. 1999)). "[M]ost cases . . . use the term 'manifest injustice' to describe the result of a plain error." *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

### III. ANALYSIS

### A. Motion for extension of time

Cabrita Point argues that the Court should have granted its motion for an extension of time to file an opposition to the Evans' motion for summary judgment. Cabrita Point represents that it complied with the substance and spirit of Rule 56(f),[3]

---

[3] Cabrita Point's argument that it complied with the "spirit and substance" of Rule 56(f), is unavailing. Such compliance was not sufficient to serve the purpose of the affidavit requirement. The Court notes that the

even though it failed to comply with the technical requirements
of the rule.

Rule 56(f) establishes the procedure for a party to follow
when seeking an extension of time to submit an opposition to a
summary judgment motion.[4]  When a party makes a Rule 56(f) motion
instead of opposing a motion for summary judgment, the party
bears the burden of proving by affidavit that the court should
exercise its discretion in delaying judgment on the motion. *See,
e.g., Pastore v. Bell Telephone Co.,* 24 F.3d 508, 510-511 (3d
Cir. 1994) ("If a party believes that s/he needs additional time
for discovery, Fed.R.Civ.P. 56(f) specifies the procedure to be
followed, and explicitly provides that the party must file an
affidavit setting forth why the time is needed.")(footnote
omitted); *Radiche v. Goode,* 886 F.2d 1391, 1394 (3d Cir. 1989)
(noting that "Rule 56(f) clearly requires that an affidavit be
filed.").

Under Rule 56(f), the affidavit in support of the

---

spirit behind Rule 56(f)'s affidavit requirement is to "ensure that the
nonmoving party is invoking the protection of Rule 56(f) in good faith and to
afford the trial court the showing necessary to assess the merit of a party's
opposition." *Pastore v. Bell Telephone Co.*, 24 F.3d 508, 511 (3d Cir.
1994)(quoting *Radich v. Goode*, 886 F.2d 1391, 1394(3d Cir. 1989)).

[4] Rule 56(f) provides:

When Affidavits Are Unavailable. If a party opposing the motion shows by
affidavit that, for specified reasons, it cannot present facts essential
to justify its opposition, the court may:
  (1) deny the motion;
  (2) order a continuance to enable affidavits to be obtained,
  depositions to be taken, or other discovery to be undertaken; or
  (3) issue any other just order.

Fed. R. Civ. P. 56(f).

continuance must specifically identify: (1) what particular
information is sought, (2) how it would preclude summary judgment
if uncovered, and (3) why such information has not previously
been obtained. *Lunderstadt v. Colafella*, 885 F.2d 66, 71 (3d Cir.
1989)(quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 140
(3d Cir. 1988)).

> The purpose of the affidavit is to ensure that the
> nonmoving party is invoking the protection of Rule
> 56(f) in good faith and to afford the trial court the
> showing necessary to assess the merit of a party's
> opposition. "An unsworn memorandum opposing a party's
> motion for summary judgment is not an affidavit."

*Pastore,* 24 F.3d at 511 (quoting *Radich,* 886 F.2d at 1394).
Indeed, the failure to file an affidavit setting forth the
reasons for a continuance is usually fatal. *See Id.* at 511.

As Cabrita Point argues, "[w]here Rule 56(f) affidavits have
been filed, setting forth specific reasons why the moving party's
affidavits in support of a motion for summary judgment cannot be
responded to, and the facts are in the possession of the moving
party, we have held that a continuance of the motion for purposes
of discovery should be granted almost as a matter of course."
*Mid-South Grizzlies v. National Football League*, 720 F.2d 772,
779 (3d Cir. 1983). However,

> *to take advantage of this provision he must state by
> affidavit the reasons for his inability to do so* and
> these reasons must be genuine and convincing to the
> court rather than merely colorable.

*Id.* (citing *Robin Construction Co. v. United States*, 345 F.2d

610, 614 (3d Cir. 1965)(emphasis added)).

Cabrita Point did not submit an affidavit in support of its motion for an extension of time.  Cabrita Point merely stated that discovery produced by the Evans on the day the Evans filed their summary judgment motion had raised the possibility that Cabrita Point might need to file a motion to compel further production, depose William Evans, or obtain the affidavit of Klaus Waechter ("Waechter"), principal of K.R.  Accordingly, the Court will not vacate its decision to deny the motion for an enlargement of time to respond to the Evans' motion for summary judgment.

**B. New Evidence**

Cabrita Point argues that because it was not granted an extension of time, the Court did not have before it all of the relevant evidence.  Cabrita Point seeks consideration of several pieces of evidence that were not submitted to the Court before its ruling.  Cabrita Point claims both that the evidence is newly discovered, and that the Court's consideration of the evidence will prevent manifest injustice.

**1. The Waechter declaration**

Cabrita Point seeks to have the declaration of Klaus Waechter ("Waechter") considered as newly discovered evidence. Waechter was the principal of the buyer, PDLP, at the time of the land sales underlying this dispute.  Cabrita Point further claims that because he lives outside the United States and no one could

hasten his cooperation, Waechter's declaration is newly

discovered evidence.

Cabrita Point states in its motion that the Waechter

declaration became available on the day of the hearing.[5]

However, Cabrita Point did not produce it at the hearing.

Cabrita Point has not shown that the information in Waechter's

declaration was unknown to it until after the hearing, or that it

could not have timely produced the declaration with reasonable

diligence. As such, the declaration is not new evidence. *See,*

*e.g.*, *Caisse Nationale*, 90 F.3d at 1269 ("CBI candidly confesses

that the new evidence it sought to present, although unknown to

it during the pendency of the cross-motions for summary judgment,

could have been adduced earlier. We agree. . . . CBI's failure to

submit these facts to the court during summary judgment

foreclosed its motion for reconsideration.").

**2. The Lawrence affidavit**

Cabrita Point also seeks to introduce the affidavit of

surveyor Leonard N. Lawrence ("Lawrence") and the maps attached

to it. Cabrita Point argues that Lawrence's affidavit should be

considered newly discovered evidence because it did not become

available until after the due date for Cabrita Point's

opposition. However, Lawrence signed his affidavit on July 12,

2007. That date was after Cabrita Point's opposition was due,

---

[5] Cabrita Point does not say whether it received the Waechter
declaration before or after the hearing.

but it was eight days before the summary judgment hearing.  For some reason, Cabrita Point failed to introduce Lawrence's affidavit at that hearing.  The affidavit was available in time to be considered by this Court, and as such, it is not newly discovered evidence.

### 3. The Hodge affidavit

Cabrita Point also seeks to introduce two affidavits of its principal, Joseph Hodge ("Hodge").  According to Hodge's affidavit, he left St. Thomas three times between June 26, 2007 and July 18, 2007 for medical testing.  Further, Hodge says he "was not able to meet with my counsel prior to June 29, 2007 to . . . finalize an affidavit in support of an opposition . . . ." for medical reasons. (Hodge Aff. I ¶ 6.)  Hodge's affidavit does not indicate why he was unable to meet with counsel and work on his affidavit between April 20, 2007, when the Evans filed their summary judgment motion, and June 26, 2007, when he took his first trip for medical testing.  Further, his statement indicates that Cabrita Point had an incomplete version of Hodge's affidavit available at some point before the hearing, but not a final version.  Further, Hodge does not rule out the possibility that he could have met with counsel on July 19, 2007, the day before the hearing, or that he could have simply testified at the hearing.  Hodge's statement that he was unavailable prior to June 29, 2007 is too open ended and unhelpful to provide meaningful review of his availability.  Further, Hodge has not stated that

there was no one else available from Cabrita Point to aver to the facts he states in his affidavit.  Significantly, Hodge's information was known by, and available to, Cabrita Point prior to the July 20, 2007 hearing, and neither of Hodge's affidavits are newly discovered evidence.

**C. Correction of Clear Error or Prevention of Manifest Injustice**

**1. Quiet title and declaratory judgment**

Cabrita Point argues that the Court's decision to quiet title in, and declare the Evans the owners of, Parcel 6D-8 was manifestly unjust.  Cabrita Point asserts that there is a temporal impossibility present in the 1982 deed that conveyed Remainder 6D from the Evans to its predecessor in interest because the map referred to in that deed is dated after the date that appears on the deed.  Cabrita Point is correct that the 1982 deed references a map that is dated after the date appearing on the face of the deed.

However, that discrepancy, under the circumstances present here, is of no legal significance.  To begin, the 1982 deed conveying Remainder 6D to PDLP had all the attributes necessary under, and was executed in accordance with, Virgin Islands law.

According to Virgin Islands law, a conveyance "includes every instrument in writing except a last will and testament, whatever may be its form and by whatever name it may be known in law, by which any estate or interest in lands is created, aliened, assigned, or surrendered." V.I. Code Ann. tit. 28, § 1.

Virgin Islands law further provides the manner in which
conveyances of real property are executed.

> A conveyance of lands, or of any estate or interest
> therein, may be made by deed, signed by the person from
> whom the estate or interest is intended to pass, being
> of lawful age, or by his lawful agent or attorney and
> acknowledged or proved, and *recorded as directed in
> this title*, without any other act or ceremony.

V.I. Code Ann. tit. 28, § 41 (emphasis supplied).  Essentially,
land is conveyed by the proper recording of a deed signed by the
person selling the land, which contains the signature of two
witnesses. *See* V.I. Code Ann. tit. 28, §§ 41, 42.  The date on the
deed has little legal significance.  *See, e.g., District of
Columbia v. Camden Iron Works*, 181 U.S. 453, 462 (1901) ("a deed
speaks from the time of its delivery, not from its date").  The
1982 deed had the Evans' signatures, signatures of two witnesses,
and was properly recorded. (Ex. 2, Evan's Mot. Summ. J.)  The
dictates in the Virgin Islands code regarding conveyance of real
property describe precisely what occurred here.  In accordance
with those dictates, the conveyance to PDLP through the 1982 deed
was completed on August 13, 1982.

The 1982 deed from the Evans to PDLP, describes the property
conveyed as:

> Remainder Parcel No. 6 Estate Nazareth, No. 1 Red Hook
> Quarter St. Thomas, Virgin Islands, as shown on P.W.D.
> No. D9-2094-T82; Remainder of Parcel No. 6D Estate
> Nazareth, No. 1 Red Hook Quarter St. Thomas, Virgin
> Islands, as shown on P.W.D. No. D9-2083-T82; Parcel No.
> 6D-1, Estate Nazareth, No. 1 Red Hook Quarter St.
> Thomas, Virgin Islands, as shown on P.W.D. No. 9-1742-

T81; Parcel No. 6D-2 Estate Nazareth, No. 1 Red Hook
Quarter St. Thomas, Virgin Islands, as shown on P.W.D.
No. D9-1743-T81; Parcel No. 6D-3 Estate Nazareth, No. 1
Red Hook Quarter St. Thomas, Virgin Islands, as shown
on P.W.D. No. D9-1742-T81; Parcel No. 6E, Estate
Nazareth, No. 1 Red Hook Quarter St. Thomas, Virgin
Islands, as shown on P.W.D. No. D9-1700-81; and Parcel
No. 6Q, Estate Nazareth, No. 1 Red Hook Quarter St.
Thomas, Virgin Islands, as shown on P.W.D. No. D9-2082-
T-82 together with the improvements thereon, if any,
but <u>excepting from this conveyance</u> Parcels Nos. 6A, 6B
and 6C Estate Nazareth, No. 1 Red Hook Quarter, St.
Thomas, Virgin Islands, as shown on respectively on
[sic.] P.W.D. No. 9D-1417-T78 dated June 26, 1978,
P.W.D. No. G9-2966-T79 dated December 3, 1979; Parcels
No. 6D-4 and 6D-5, Estate Nazareth, No. 1 Red Hook
Quarter, St. Thomas, Virgin Islands, as shown on P.W.D.
No. D9-1758-T81 dated May 26, 1981; Parcel No. 6F
Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas,
Virgin Islands, as shown on D9-1744-T81 dated May 18,
1981; Parcel No. 6H, Estate Nazareth, No. 1 Red Hook
Quarter, St. Thomas, Virgin Islands, as shown on P.W.D.
No. D9-1760-T81 dated May 28, 1981; Parcel No. 6I
Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas,
Virgin Islands, as shown on P.W.D. No. D9-1761-T81,
dated May 28, 1981, parcel No. 6L Estate Nazareth, No.
1 Red Hook Quarter, St. Thomas, Virgin Islands, as
shown on P.W.D.D9-1769-T81 [sic.] dated June 5, 1981;
and Parcel No. 6N Estate Nazareth, No. 1 Red Hook
Quarter, St. Thomas, Virgin Islands, as shown on P.W.D.
No. D9-1835 T81 dated August 19, 1981 which have
previously been conveyed and excepting from this
conveyance also parcels No.6O, 6D-6 and 6D-7 Estate
Nazareth, No. 1 Red Hook Quarter, St. Thomas, Virgin
Islands, as shown on P.W.D No. D9-1919-T81; Parcel No.
6G Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas,
Virgin Islands, as shown on P.W.D. No. D9-1760-T81;
Parcel Nos. 6J and [illegible]K Estate Nazareth, No. 1
Red Hook Quarter, St. Thomas, Virgin Islands, as shown
on P.W.D. No. D9-1770-T81; and Parcel No. 6P Estate
Nazareth, No. 1 Red Hook Quarter, St. Thomas, Virgin
Islands, as shown on P.W.D. D9-1920-T81 which are
hereby retained by the grantors.

(Mot. Summ. J. Exh. 2, emphasis in original.)  The text

reproduced above represents the entire description of the

property conveyed.  There are no metes and bounds descriptions,

and there is no acreage provided.  Importantly, the deed does not

convey Parcel 6D-8.  Further, on its face, there are no

ambiguities in the deed.

Moreover, the map referenced in the 1982 deed, PWD D9-2083-

T82, which is dated June 14, 1982, included Parcel 6D-8.  That

map's existence predated recordation of the deed.  Indeed,

Phyllis Harrigan ("Harrigan"), a Special Assistant to the Tax

Assessor for Surveys at the Cadastral Office, who has worked

there since 1982, avers that she has examined PWD D9-2083-T82,

and the 1982 deed from the Evans to PDLP. (Harrigan Decl. ¶ 6.)

Harrigan has described the effect of attestation:

> A survey map must show all of the metes and bounds
> description for the parcel in order to be an acceptable
> description to obtain an attestation on the deed, which
> is a certification by the Cadastral Office that the
> property has not undergone any boundary changes and
> that the deed correctly identifies the survey map that
> goes with the parcel.

(*Id*. at ¶ 9.)  Her declaration indicates that the deed was taken

to the Cadastral Office on or before August 12, 1982, at which

time it was able to obtain attestation. (*Id*. at ¶ 9-10.)  The

survey map describing Remainder 6D in the deed was PWD D9-2083-

T82, which shows Parcel 6D-8 as a separate parcel.

There is no dispute regarding the fact that the Evans took

title to Parcel 6 in 1976. (Ex. 1. Evans' Mot. Summ. J.; Cabrita

Point's Answer to First Am. Compl. ¶ 7.)  The parties also do not

dispute that the land comprising Parcel 6D-8 was, at that time,

part of Parcel 6.  (*See* Evans' First. Am. Compl. ¶ 7; Cabrita

Point's Answer to First Am. Compl. ¶ 7.)  It is beyond

peradventure that a parcel owned, and not conveyed, is retained

by the owner.  *See Powell on Real Property* Vol. 14, § 81.02

(2000) ("A seller may also, of course, convey only a partial

interest in the property while retaining a portion as the

seller's own. For example, a seller may subdivide a parcel of

land, conveying only the north one-half to a purchaser.").  The

Evans made an initial showing that there are no material facts in

dispute regarding their title to Parcel 6D-8, and that they were

entitled to judgment as a matter of law, based on those facts.

Cabrita Point has at best shown that there is some

chronological inconsistency between the legally insignificant

date on the deed and the date on the map it incorporates.

Cabrita Point has not shown that this Court's judgment was in

error or that it works manifest injustice.[6]  As such, the Court

will deny Cabrita Point's motion to reconsider its summary

judgment quieting title in, and granting declaratory judgment

for, the Evans, or its grant of summary judgment for the Evans on

---

[6] Cabrita Point also makes much of the fact that in 1994 the Evans
swapped interests in property they had held in common, so that each could have
a 100% interest in particular parcels, in a document that does not refer to
Parcel 6D-8.  Cabrita Point argues that this document shows the Evans did not
consider themselves owners of Parcel 6D-8.  However, the 1994 quit claim deed
clearly states that the Evans "own various properties located in St. Thomas,
Virgin Islands as Tenants in Common and . . . now desire to divide *some* of
these properties such that they will now own in fee simple absolute a 100%
interest in some of the properties that are subject of this Deed . . . ."
(Exh. 5 Opp. Summary J)(emphasis added).  The Evans' statement that they are
dividing up some of their properties indicates that there are others that are
not swapped by the 1994 deed.  As such, the 1994 deed cannot be construed as
evidence that supports Cabrita Point's claim of ownership of Parcel 6D-8.

those same counts of Cabrita Point's complaint.

## 2. Adverse Possession

The Evans sought summary judgment on Cabrita Point's adverse possession claim. The Evans asserted that Cabrita Point could not establish actual, physical possession of Parcel 6D-8. The Court granted the Evans summary judgment on Cabrita Point's adverse possession claim. Cabrita Point argues that the Court's ruling was clear error because the Court relied on incompetent evidence in finding there were no material facts in dispute.

In the Virgin Islands, a party acquires title to property through adverse possession where that party establishes "uninterrupted, exclusive, actual, physical adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more . . . ." V.I. CODE ANN. tit. 28, § 11.

Under Virgin Islands law, a party claiming adverse possession must show ownership that is "evidenced by such conduct as is sufficient to put a man of ordinary prudence on notice of the fact that the land in question is held by the claimant as his own." *Netsky v. Sewer*, 205 F. Supp. 2d 443, 460 (D.V.I. 2002). To establish actual, physical possession a party must prove activities such as "construction of buildings and making of improvements." *Netsky v. Sewer*, 02-2536, 02-2537, 02-2696, 2003 U.S. App. LEXIS 23046, at *8 (3d Cir. Oct. 29, 2003) (unpublished); *see also Hodge v. McGowan*, 2007-057, 2008 V.I. Supreme LEXIS 46, at * 37-38 (V.I. Nov. 10, 2008) (finding that

erecting a fence and grazing goats on land was not sufficient for actual, physical possession).  The claimant must prove by clear and convincing evidence the elements of an adverse possession claim. *Netsky*, 205 F. Supp. 2d at 459 (citing *McNamara v. Christian*, 26 V.I. 109, 112 (Terr. Ct. 1991)).

Cabrita Point argues the Court considered irrelevant evidence in ruling that Cabrita Point could not prove actual possession.  Cabrita Point represents that the 15 year prescriptive period ran from 1981, when PDLP and the Evans signed a contract for the land sale, to 1996.  The evidence the Evans presented regarding actual possession, an affidavit and photos by a real estate agent, established that in 2007, Parcel 6D-8 was in an undeveloped state.  The 2007 affidavit and photographs also demonstrated that there were no remnants of structures on Parcel 6D-8, and that there was mature brush growing on the parcel. (Smith Aff. 2, Exh. 10 Evans' Mem. Supp. Mot. Summ. J.; Exh. 11 Evans' Mem. Supp. Mot. Summ. J.)  These impressions indicate that it is unlikely the parcel was ever improved, even during the prescriptive period during which Cabrita Point claims it adversely possessed the parcel.

Even if the Court were to consider Cabrita Point's late submissions, at best they show that Hodge exposed bounds posts, cleared brush, and put up for-sale signs on Parcel 6D-8.  Such activities are hardly the kind that have been found to amount to actual possession.  Indeed, adverse possession claims have failed

where they were based on much more significant, physical occupation of the land. *See, e.g.*, *Netsky*, 205 F. Supp. 2d at 459-60 ("she placed wooden fence posts in the ground, but did not connect them with any fencing. . . . She also placed various signs around the property. . . . She alleges that she has run a campground covering Parcel 6AB and an unspecified portion of 6E . . . . . She claims to have constructed wooden platforms on which campers could put their tents, and installed water tanks, a shower, and a toilet on the property . . . she has charged the public a fee to use the premises. . . . The Court determines that on these facts, Violet Sewer's adverse possession claim fails as a matter of law because she has not met the requirements set forth in 28 V.I.C. § 11."); *McNamara v. Christian*, 26 V.I. 109, 113 (finding evidence of building a tool shed and dog house, clearing the land regularly, and posting no trespassing signs insufficient to support a claim of adverse possession).

In sum, Cabrita Point has not shown that its late filed evidence, even if considered, would create a genuine issue of material fact to overcome the Evans' demonstration of their entitlement to summary judgment. As such the Court will deny the motion to reconsider its summary judgment on Cabrita Point's adverse possession claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Cabrita

Point's motion to reconsider, vacate, or reopen judgment.  An

appropriate order accompanies this memorandum opinion.


S\_____
                                    **Curtis V. Gómez**
                                     **Chief Judge**